# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

DOYLE KELLEY                                                                 PLAINTIFF


v.                             NO. 1:06CV00010 HDY


JO ANNE B. BARNHART,                                              DEFENDANT
Commissioner of the Social
Security Administration


## MEMORANDUM OPINION AND ORDER

The record reflects that in March of 2004, plaintiff Doyle Kelley ("Kelley") filed applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration. He next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In November of 2005, the ALJ issued a ruling adverse to Kelley. He then appealed that ruling to the Appeals Council. In February of 2006, the Appeals Council affirmed the ruling of the ALJ. That ruling became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In March of 2006, Kelley commenced the proceeding at bar in which he challenged the final decision of the Commissioner.

The sole inquiry for the Court in this proceeding is whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012. The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion. See Id.

The Court begins an analysis of the record in this proceeding by outlining the Commissioner's findings, findings made pursuant to the five step sequential evaluation process.[1] At step one, the Commissioner found that Kelley has not engaged in substantial gainful activity since the alleged onset date. At step two, the Commissioner found that Kelley has a history of treatment for Hepatitis C, mood disorder, and substance addiction. At step three, the Commissioner found that Kelley's impairment or combination of impairments neither met nor equaled a listed impairment.[2] With regard to Kelley's subjective allegations, the Commissioner applied the teachings of Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984), and found as follows:

---

[1]

The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

[2]

The Commissioner noted that "[t]he Regulations provide a special method for evaluating mental impairments." See Transcript at 15. The Commissioner considered Kelley's alleged mental impairments pursuant to the "B" and "C" criteria of mental impairments listed in Appendix 1. The Commissioner found no evidence of Kelley's alleged mental impairments consistent with the "B" and "C" criteria.

It must first be noted that the medical findings that are present are not consistent with the disabling level of pain alleged by [Kelley]. Certainly his allegations cannot be disregarded on this basis, but this is a factor which must be considered. The absence of objective medical findings to support allegations of disabling pain or other symptoms is one factor, which can be used to evaluate credibility. [Citation omitted].

The fact that [Kelley] may have some level of discomfort was given due consideration in reaching the finding that he would be limited to light work.[3] There is evidence that [he] stopped working for reasons not related to the allegedly disabling impairments.

There is evidence that [Kelley] has misrepresented facts relevant to the issue of disability. In addition, the record includes statements by third parties suggesting that [he] may be misrepresenting the degree of limitation present.

With regard to aggravating factors and functional limitations, [Kelley] has alleged that he is unable to work due to chronic fatigue and because he cannot be around other people. According to the testimony and Exhibit 1E, his daily activities include taking care of his personal needs, doing laundry, washing dishes, changing sheets, ironing, vacuuming, home repairs, preparing meals, driving, … reading, [and] visiting with friends. Allegations of disabling pain may be discredited by evidence of daily activities inconsistent with alleged level of pain. [Citation omitted].

In the judgment of the [Commissioner], the symptomatology suffered by [Kelley] is not of a duration, frequency, or intensity as to be disabling nor would it preclude the performance of light work.

Another factor influencing the conclusions reached in this decision is [Kelley's] generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of [his] allegations and [his] residual functional capacity.

---

3

The Commissioner found that Kelley retains the residual functional capacity to perform light work.

See Transcript at 17.  The Commissioner then proceeded to step four.  At that step, the Commissioner found that although Kelley has "significant limitations in his capacity for ... prolonged standing and walking," see Transcript at 19, he is capable of "standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday," see Transcript at 16.  The Commissioner found that Kelley retains the residual functional capacity for light work and thus cannot perform his past relevant work as a "mechanic, saw hand at a logging company, or construction carpenter."  See Transcript at 19.  The Commissioner then proceeded to step five.[4]  At step five, the Commissioner solicited the testimony of a vocational expert.  The Commissioner asked the vocational expert to assume, inter alia, that the hypothetical individual would "miss from one to two weeks in a six-month period" due to fatigue from Hepatitis C, "could stand for eight hours if he is moving around," "can't stand in one place for that long but if he's able to move around he can stand," and has some "moderate limitations in ... dealing with the general public and co-workers."  See Transcript at 617-618.  The vocational expert testified that there was work in the economy that the individual can perform.  On the basis of that testimony, the Commissioner concluded that Kelley was not disabled within the meaning of the Act.

---

[4]

   In proceeding to step five, the Commissioner specifically noted that "the burden shifts to the Commissioner to establish that there are significant numbers of jobs existing in the national, regional, or local economy that [Kelley] can perform considering [his] age, education, past work experience, and residual functional capacity."  See Transcript at 18.

Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Kelley thinks not and advances two reasons why the findings are not so supported.  He first maintains that the hypothetical question posed by the Commissioner did not accurately reflect the full extent of Kelley's mental and physical impairments. With specific regard to the mental impairments, Kelley maintains that they were "understated" by the Commissioner.  <u>See</u> Document 10 at 11.[5]  With specific regard to Kelley's physical impairments, he maintains that the Commissioner made inconsistent findings.[6]

A hypothetical question is sufficient if it contains all the impairments supported by substantial evidence on the record as a whole.  <u>See</u> <u>Goff v. Barnhart</u>, 421 F.3d 785 (8th Cir. 2005).  The question need not contain every impairment alleged by the claimant, only those that are supported by substantial evidence.  <u>See</u> <u>Haggard v. Apfel</u>, 175 F.3d 591 (8th Cir. 1999).

---

[5]

Kelley maintains the following: "The only mental limitation included in the hypothetical is a limitation on frequent contact with supervisors, co-workers and the public due to [his] problems with anger outbursts. ... The medical evidence, however, indicates that [he] suffers from additional mental problems and limitations that were not included in the hypothetical." <u>See</u> Document 10 at 11-12. Kelley maintains that he suffers from, <u>inter alia</u>, "chronic depression and anxiety, lapses in concentration and attention, and memory deficits ..." <u>See</u> Document 10 at 12.

[6]

Kelley maintains the following: "The [Commissioner] specifically found that Kelley has 'significant limitations in his capacity for ... prolonged standing and walking.' ... To be capable of performing light work, a claimant must be able to do 'a good deal of walking or standing' ... The hypothetical states only that Kelley 'stand for eight hours if he is moving around.' ... This does not make sense-if Kelley is moving around, he is not <u>standing</u>, but <u>walking</u>. ... The imprecision and ambiguity of the [Commissioner] hypothetical on this point again does not accurately capture the concrete consequences of Kelley's limitations as found by the [Commissioner]." <u>See</u> Document 10 at 12-13 [emphasis in original].

The Court is satisfied that the hypothetical question accurately reflected the full extent of Kelley's mental impairments.[7]   The Court is concerned, however, about whether the question accurately reflected the full extent of his physical impairments. As the Court will more fully develop below, the concern of the Court springs from two sources: first, the number of work days Kelley must miss because of fatigue brought about by Hepatitis C; and second, his ability to stand and/or walk during the work day.

---

[7]

With regard to Kelley's mental impairments, Dr. James Bradley ("Bradley") performed a consultative examination of Kelley in October of 2002. Bradley opined that Kelley has "severe limitations from mental illness and substance abuse" and would "pose a hazard to those around him in the work environment." See Transcript at 485. The Court would ordinarily be troubled by such an assessment, but the record in this proceeding contains evidence that is inconsistent with Bradley's assessment.

Dr. George DeRoeck ("DeRoeck") examined Kelley on two separate occasions. DeRoeck first examined Kelley in October of 2002, the same month he was seen by Bradley. DeRoeck diagnosed Kelley as having, inter alia, an adjustment disorder, chronic depression, a history of cannabis and methamphetamine use, and an "impulse control disorder." See Transcript at 508. DeRoeck also noted the following: "[Kelley] does indicate being able to engage in some type of employment, outside of "social" channels but identifies inability to 'hold up' physically for various tasks." See Transcript at 509.

DeRoeck examined Kelley a second time in July of 2004. DeRoeck noted that Kelley "identifi[ed] being in need of Social Security disability benefits, stating, 'I've been feeling really bad here lately.'" See Transcript at 493. DeRoeck also noted the following: "[Kelley] did appear genuine in the session though appeared to be somewhat disingenuous relating issues associated with 'seeing tracers,' 'tree people,' 'things that are moving that aren't there,' ..." See Transcript at 500.

In August of 2004, Kelley was examined by Dr. Albert Kittrell ("Kittrell"), a psychiatrist with the Arkansas Department of Correction. Kittrell diagnosed Kelly as having a probable antisocial personality disorder but was otherwise probably malingering. Kittrell's additional findings and impressions from that examination were as follows: "When [Kelley] perceived that I was not going to prescribe medications to him, then he spontaneously reported, 'What about these voices?' He explained that it is 'like the walls have ears' and that he can hear other people talking loudly from his cell. He did not report any commands. He says this has been going on for 'years.'" See Transcript at 582.

DeRoeck and Kittrell's findings and impressions of Kelley are inconsistent with those offered by Bradley. The Commissioner could therefore find that the extent of Kelley's mental impairments were not as great as found by Bradley. Because the Commissioner could so find, the portion of the hypothetical question involving the extent of Kelley's mental impairment was properly phrased.

With regard to the number of work days Kelley must miss because of fatigue brought about by Hepatitis C, the record reflects that he testified as follows:

Q. So these combination of problems–I think the question was do you still believe you can't work?  And I guess what you're saying is there are days that you can, but you might have problems other days.

A. Well, sometimes, I can work for a month, two months at a time and then it just–then it comes on, I mean with hepatitis, you don't–you're not fatigued all the time.  Sometimes you can get up and do what you have to do and sometimes you just can't get up and do what you have to do and sometimes you just can't hardly move at all.  You just don't want to crawl out of bed.

Q. So how often would you miss work on account of the fatigue?

A. Well--

Q. You know, in a six-month period or a year period, how often–or how many days do you think you would–your fatigue would interfere with getting to work or completing a normal workday?

A. Sometimes–I don't know.  In a six-month period, I might miss a week, two weeks at–straight at a time.  I mean once it starts, it lasts a while and you sort of heal up.  I don't know if it's from infection or what.

See Transcript at 609-610.  It is not clear whether the Commissioner credited Kelley's testimony regarding fatigue, although the Commissioner did acknowledge the testimony in the written decision.  It is clear that the vocational expert was asked to assume, inter alia, that the hypothetical individual would "miss from one to two weeks in a six-month period" due to fatigue.  Following the vocational expert's answer, the following exchange occurred between Kelley's attorney and the vocational expert:

> Counsel: I just–I think I just have one question, Your Honor.  Ms. Clem, the Judge included one to two weeks of missing work every six months.  So in your opinion that's within the customary tolerance for employers who would employ janitors and cafeteria attendants and assemblers.
>
> vocational expert: Well, between the one to two weeks I mean it's kind of hard to say.  I mean with the six months you're going to have what, 24 weeks in there, so if you're–if you average that out and it wasn't one week straight, two weeks straight I think a periodic absence is going to be tolerated.
>
> Counsel: So would it make a difference if it was a–if it wasn't spread out, if it was, you know, one week this six months, two weeks the next six months–I mean two weeks straight? I believe that was his testimony is that he doesn't go down for a day and then back.  It's more of extended periods that would interfere.
>
> vocational expert: In my opinion it would.  I mean if you're going to take off especially in unskilled positions for a week or two weeks at a time I think it would affect job duties.  Yes.

See Transcript at 620-621.

The hypothetical question lacks clarity with regard to the number of work days the hypothetical individual must miss because of fatigue brought about by Hepatitis C. Although Kelley testified that fatigue causes him to miss one to two weeks "straight at a time," the question does not distinguish between non-consecutive absences totaling one to two weeks during a six month period and one to two weeks of continuous absences during a six month period.  The distinction is important because, as the vocational expert testified, the latter impacts his ability to perform other work.  The Commissioner should clarify the question, as well as make a credibility finding about

-8-

Kelley's testimony concerning his anticipated inability to work days because of fatigue

brought about by Hepatitis C.

    With regard to Kelley's ability to stand and/or walk during the work day, the

record reflects that he testified as follows:

> Q. So if you had a job where you were expected to be on your feet
> most of the day, maybe five or six hours out of the day, can you do that
> much standing?
>
> A. No, sir.
>
> Q. How long can you be up on your feet doing something before you,
> you know, need to get off your feet, take a break?
>
> A. If I'm constantly moving I could probably work an eight-hour day,
> but if I'm just standing in one spot I wouldn't be able to do it because I
> ain't got no circulation.
>
> Q. Okay.  So walking is better for you than standing.
>
> A. Yes, sir.

See Transcript at 611.  The Commissioner made the following findings with regard to

Kelley's ability to stand and walk: (1) Kelley has "significant limitations in his capacity

for … prolonged standing and walking," see Transcript at 19; and (2) he is capable of

"standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour

workday," see Transcript at 16.  The vocational expert was asked to assume, inter alia,

that the hypothetical individual can "stand for eight hours if he's moving around" and

"can't stand in one place for that long but if he's able to move around he can stand."
<u>See</u> Transcript at 617.

Kelley's testimony regarding his ability to stand and/or walk lacks clarity.  As the
Court noted above, he testified that he could not work a job that required him to "be
on [his] feet most of the day."  He then testified that he could probably work an eight
hour day if he did not have to stand in one spot but was "constantly moving."  It is
difficult to reconcile those two representations.   It is probable that the second
representation, <u>i.e.</u>, Kelley's statement that he could work an eight hour day if he were
"constantly moving," is a clarification of the first representation and that he was
attempting to distinguish between his ability to "stand[] in one spot" during an eight
hour work day and his ability to walk during the work day.  The Court does not know that
for a fact, and the Commissioner should have sought clarification.

The Commissioner's findings regarding Kelley's ability to stand and/or walk also
lack clarity.  The Commissioner found that Kelley has "significant limitations in his
capacity for … prolonged standing and walking."  The Commissioner nevertheless found
that Kelley is capable of "standing and/or walking with normal breaks for a total of
about 6 hours in an 8-hour workday."  The Court cannot reconcile the two findings.  It
seems that a "significant limitation" would be more restrictive than the six hour

-10-

limitation found by the Commissioner.[8]  These findings should be clarified by the Commissioner.

The Commissioner's hypothetical question also lacks clarity.  The Court has no misgivings about the portion of the question concerning the hypothetical individual's ability to walk during an eight hour work day.  Kelley testified that he could probably work an eight hour day if he could move from one place to another on a constant basis–which the Court understands to be walking–and the Commissioner incorporated that limitation into the question.  The misgivings of the Court arise over the portion of the question concerning the hypothetical individual's ability to stand during an eight hour work day.  Kelley testified that he could not "stand[] in one spot."  The Commissioner's question did not incorporate that limitation; instead, the Commissioner asked the vocational expert to assume, <u>inter alia</u>, that the hypothetical individual could "stand for eight hours if he's moving around" and "can't stand in one place for that long but if he's able to move around he can stand."  The Court understands the phrase "stand for eight hours if he's moving around" to be walking.  The Court has no idea, though, what is meant by the phrases "can't stand in one place for that long," and "if he's able to move around he can stand."  The question should be clarified by the Commissioner.

In conclusion, the Commissioner's findings are not supported by substantial

---

[8]

A definite finding regarding Kelley's ability to stand and/or walk is important because light work requires, in part, a "good deal of walking or standing."  <u>See</u> 20 C.F.R. 404.1567(b)

evidence on the record as a whole.   The Commissioner shall more fully develop the record with regard to the following:

(1) the number of work days Kelley must miss because of fatigue brought about by Hepatitis C, as well as make a credibility finding about his testimony concerning his anticipated inability to work days because of fatigue brought about by Hepatitis C.  The Commissioner should also clarify the portion of the hypothetical question involving that matter.

(2) Kelley's testimony as to his ability to stand and/or walk, the findings regarding his ability to stand and/or walk, and the portion of the hypothetical question involving that matter.

The Commissioner's decision is reversed, and this proceeding remanded.  This remand is a "sentence four" remand as that phrase is defined  in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).  Judgment will be entered for Kelley.

IT IS SO ORDERED this ___15___ day of February, 2007.


_____
                 UNITED STATES MAGISTRATE JUDGE